# Exhibit "A"

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
******************

| | | |
|---|---|---|
| JESSYCA REDLER; BRYAN REDLER, | ) | Case No. 3:14-cv-00017-CVG-RM |
| Plaintiffs, | ) | Action for: Negligence/Personal Injury; Breach of Contract |
| v. | ) | Jury Trial Demand |
| MARRIOTT OWNERSHIP RESORTS (ST. THOMAS) INC. d/b/a MARRIOTT FRENCHMAN'S COVE, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S EXPERT WITNESS DISCLOSURE

**Please Take Notice** that Plaintiffs, **Jessyca Redler** and **Bryan Redler**, by and through its

counsel the, **Law Offices of Karin A. Bentz, P.C.** (Karin A. Bentz, Esq. and Gregory Adam Thorp,

Esq.), pursuant to Federal Rule of Civil Procedure 26(a)(2), hereby disclose their Safety Expert in

this matter.

Carl Abraham is expected to provide testimony stating that the state of the umbrella that hit

Ms. Redler made it unsafe and that allowing the umbrella to exist in the condition it was in was a

breach of duty of care on the part of Defendant. Dr. Abraham's report and CV are attached. This

report and the attachments contain all the information mandated in Rule 26(a)(2)(B), 1) a complete

statement of all opinions the witness will express and the basis and reasons for them; 2) the facts or

data considered by the witness in forming them; 3) any exhibits taht will be used to summarize or

support them; 4) the witness's qualifications, including a list of all publications authored in the

previous 10 years; 5) a list of all other cases in which, during the previous 4 years, the witness

testified as an expert at trial or by deposition; and 6) a statement of compensation to be paid for the

study and testimony in the case.

Attached are Bates Nos. 000346-000363.

Redler v. Marriott Int'l                                    Case No. 3:14-cv-00017-CVG-RM
Plaintiff's Expert Witness Disclosure                      Page 2

Respectfully Submitted,
**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: December 22, 2014                 /s/ Karin A. Bentz
                                         **Karin A. Bentz, Esq. (V.I. Bar No. 413)**
                                         **Gregory Adam Thorp, Esq. (V.I. Bar No. 1117)**
                                         32B Dronningens Gade, Suite XB
                                         5332 Raadets Gade, Suite 3
                                         St. Thomas, VI 00802-6309
                                         Telephone: 340-774-2669
                                         Facsimile: 340-774-2665
                                         Email: kbentz@virginalaw.com
                                                athorp@virginlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of December, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of the Virgin Islands of St. Thomas and St. John using the CM/ECF system, which automatically served opposing counsel in this case.

Hamilton, Miller & Birthisel LLP
Attn: Niva M. Harney-Hiller, Esq. LL.M.
150 Southeast 2nd Avenue, Suite 1200
Miami, Florida 33131
Email: nharney@hamiltonmillerlaw.com
(305) 379-3686 Office (ext. 228)
(305) 379-3690 Facsimile

                                         /s/ Karin A. Bentz

*SCIENTIFIC ADVISORY SERVICES, Ltd.*
**3 Baker Hill Road**
**Great Neck, New York 11023**
**Tel 516-482-5374   -   516-482-1231 fax**
**email  cjabraham1@aol.com**
**www.scientificadvisory.com**

**December 22, 2014**

**Karin A. Bentz, Esq.**
**% Law Offices of Karin A. Bentz, P.C.**
**5150 Dronningens Gade – Suite 10**
**St. Thomas, VI 00802**

Re: Jessyca Redler and Bryan Redler vs. Marriott Frenchman's Cove

1.   My name is Carl J. Abraham, and my address is 3 Baker Hill Road, Great Neck, New York 11023.  I am presently the Director of Scientific Advisory Service, Ltd. a corporation that consults internationally to corporations, the legal profession, and government agencies internationally in the areas of safety, safety engineering and design, new product development, OSHA, manufacturing, risk analysis, warnings and instructions, quality control and the analysis of personal injury accidents.  I also have extensive experience in manufacturing in the Far East in countries such as China and India.  I am also familiar and experienced with the manufacturing protocol in those countries as well as the United States, the test protocol of their quality control, their preparation of warnings and instructions and the risk analysis involved in products prior to putting them in the stream of commerce.

2.   I am a licensed Professional Engineer with a specialization in Safety, Safety Engineering and Design.  I have been a member of the ASTM from 1964 to the present time.  A listing of the committees I am actively involved in is attached and listed on my CV which is attached as Schedule A.

3.   Furthermore, I have over 40 years of experience in evaluating brain injury cases.  I have published peer reviewed papers in that area and have been a guest speaker on brain injuries at a number of conventions in the United States, Canada and Europe.

4.   It is understood that on Sunday, April 15, 2012, the second day of Ms. Redler's vacation she was sitting on a lounge chair by the pool under the subject opened umbrella with one of her twin daughters on the premises of the Marriott Frenchman's Cove resort.  There was a strong breeze blowing and, at approximately 11:45 in the morning, Ms. Redler's daughter asked her for a snack.  As she leaned over to retrieve her bag, the next thing she knew is that she heard a loud pop.  The wind blew the umbrella over and the steel pole hit her in her head.  She doesn't remember anything except that a man named Scott was asking her if she could stand up because he could

not lift a large shade umbrella that was previously supported by a steel pole placed in a stanchion.

5.  When the umbrella came down the steel pole struck Ms. Redler in her right temple and right eye causing her to lose consciousness. When she came to, she had blurred vision and extreme pain in her head and eye.

6.  The loss prevention representative at the Marriott Frenchman's Cove completed the incident report with her and then admitted to her that the stability of the umbrellas was a problem that the Marriott Hotel was aware of and they were solving the problem by securing the umbrellas with new cement bases.

7.  There is an allegation by the defendant that Ms. Redler opened the umbrella. It is important to note that one must be able to lift over 60 pounds in order to lift the umbrella and place the pin through the holes to hold the umbrella in the open position. It would be impossible for Ms. Redler to perform that task based upon the measurement taken by the undersigned on December 12, 2014.

8.  On Friday, December 12, 2014 the undersigned had an opportunity to perform an inspection at Marriott's Frenchman's Cove and perform a few tests on two separate umbrellas placed in a stanchion. The attorney representing the defendant, Ms. Charles stated that the Marriott did not have the actual umbrella and stand that is involved in the case that severely and permanently injured Jessyca Redler. This would be considered spoliation. There is no guarantee, that either one of the two different umbrellas evaluated by the undersigned, were exact exemplars of the one that was blown over by the wind at the time Ms. Redler was injured.

9.  I reviewed the photographs taken of the actual umbrella on the day of the accident which were also submitted to the Liberty Mutual Insurance Company in the Demand Letter to Jennifer Coe, Claims Case Manager II for Liberty Mutual by Karin Bentz, Attorney for Ms. Redler.

10. At approximately 8:00 p.m. on April 15th, Ms. Redler's headache became so severe that she went to Schneider Hospital on St. Thomas. Dr. Wakil diagnosed Ms. Redler with a concussion. He described her symptoms as dizziness, nausea, severe head pain, anxiety, tightness in her chest, light headedness, fatigue, irritability, a lump and bruise on her right temple, swelling around her eye, blood vision in her eye, and pain in her left groin and hip. He diagnosed her injury as post concussive syndrome and ordered Ms. Redler to take 14 days off from work. He further stated that she needed to see a neurologist before she flew because the change in air pressure could be very painful. All of these symptoms continued for the next 12 weeks where, additionally, she was continuously irritable and lacked patience.

11. Ms. Redler then met with Dr. Weisher on April 25, 2012 and she was allowed to fly home on April 28, 2012. On her return to Boston, Ms. Redler consulted with Dr. Gold, a neurologist. At the present time, Ms. Redler continues to experience intermittent head pain that is quit sharp and strong. She is also experiencing insomnia and blurred

2

vision in her right eye. She experiences extreme pain when she attempts to sleep on her left side. On September 25, 2012 an MRI of her hip and groin showed an avulsion injury of her gluteus minimus tendon which connects her gluteus minimus muscle.

12. Ms. Redler's brain injury has significantly affected the quality of her life. Her severe headaches have continued. She has significant memory loss and is required to follow post-its to make sure that her responsibilities in life and with her children are taken care of. She has all of the common signs of dementia which include, but are not limited to memory loss, impaired judgment, inappropriate behavior, loss of communication skills, disorientation to time and place. Her current and permanent symptoms caused by the single trauma of the steel pole hitting her brain on April 15, 2012.

13. Testing was performed by the undersigned on umbrellas supplied by the defendant demonstrated that, in both cases, that it could be easily blown over by a gust of wind without anyone touching the pole or the umbrella. It took less than 10 pounds of force to push the umbrella and stanchion over to a point where it fell to the ground. Once the stanchion, steel pole and umbrella moved approximately 12 inches off center, the umbrella and steel pole fell to the ground with more than enough force to produce Ms. Redler's concussion. Ms. Redler's symptoms will get worse and will not subside for the rest of her life.

14. It is important to note the following:

   a) A management and loss prevention representative of the Marriott was on notice that the steel pole of the umbrella struck Ms. Redler's head and she was knocked unconscious.

   b) The management and owners of Marriott Frenchman's Cove has been on notice for decades, that the stanchions used by the Marriott, were not sufficient to maintain the integrity of an open umbrella when strong breezes or wind was occurring. They knew, or should have known, that there were alternative safer methods of securing the umbrellas that neighboring hotels were using and that they could have easily used in lieu of stanchions. Marriott could have easily placed the poles in a support that was placed in cement below ground. They failed to follow that protocol that has been used for decades. Marriott deviated from the standard of care known in the industry.

   c) The owners and management of the Marriott Frenchman's Cove hotel knew, or should have known, that if strong winds or gusts of winds were observed, that the employees of the Marriott had to close all of the umbrellas because guests such as Ms. Redler did not have enough strength or the ability to lift up the connections between the umbrella and the steel pin that held the umbrella in place. That steel pin had to be released in order for the umbrella to fold up.

   d) The management of the Marriott, through the loss prevention representative, knew, or should have known, that Ms. Redler received a concussion. The defendant should have had individuals with training, background and

3

experience, such as a nurse, nurse practitioner or medical specialist that knew how to handle Ms. Redler's  brain injury and coordinate her movements and trip to the nearest hospital that was capable of handling her injury.  It should also be noted, that the defendant did not have any kind of an emergency protocol to transport Ms. Redler to the nearest hospital.

e)  The management knew, or should have known, that any of their guests receiving a concussion required immediate medical assistance.  That is the protocol followed by other Marriott Hotels throughout the United States and the Caribbean.

f)  The Marriott management knew, or should have known, that any delay in the medical management of a concussion will exacerbate the pre-existing injury resulting in additional damage to the brain with residual after effects and a longer recuperation period.

g)  It is extremely important to note that there is no such designation as a mild concussion.  A concussion is a concussion is a concussion!

h)  The exacerbation of Ms. Redler's concussion was manifested at approximately 8 p.m. on the date of the accident.  Her headache was so severe and painful that she had to go to the emergency room of Schneider Hospital on St. Thomas.

i)   It is very important to note that there is no such thing as a "mild traumatic brain injury."  A concussion is a concussion, and there is no differentiation as to designating  the level of a concussion.

j)  The standard of care that is followed by all hotels in the Caribbean and throughout the United States is that when there is a strong breeze or wind by the pool or on the beach, all umbrellas must be closed.  The Marriott deviated from that standard of care and, as a result, Jessyca Redler was permanently injured.  Her condition will, predicatively, get worse as a function of time.

k)  The management and owners of Marriott Frenchman's Cove had been on notice for decades with reference to wind gusts and the instability of umbrellas on stanchions.  They knew, or should have known, that a small gust of wind can easily blow over an umbrella with a steel pole.  They intentionally ignored that standard of care and, as a result, the subject umbrella easily blew over and, after it knocked out Ms. Redler, it has continuously manifested itself with all the symptoms described above affecting her quality of life for the rest of her life.

l)  The owners and management of Marriott Frenchman's Cove did not perform a risk analysis on the design and lack of integrity of the subject umbrella and stanchion.  If they were qualified to do so they would have determined immediately, that the subject umbrella and stanchion that were in use, were not fit for their intended purpose and foreseeable exposure to wind gusts.

4

m) Most importantly, Marriott, contrary to the requests of Karin Bentz, the attorney for Ms. Redler, the defendant stated that they were going to produce the actual stanchion and umbrella for tests to be conducted by the undersigned. The attorney, who flew in from Miami for the inspection, failed to produce the actual umbrella and stanchion that produced Ms. Redler's permanent brain injury. In spite of that, the undersigned was able to demonstrate on videotape and through photographs, that only a small force was capable of tipping over the stanchion and steel pole umbrella that easily produced a significant and permanent brain injury to Ms. Redler who is only in her 40's.

n) It is a known fact that, restaurants with chairs, tables, and umbrellas outside; resorts throughout the world; spas; and hotels fold and tie up their umbrellas whenever there is a danger of the umbrella being thrown over due to gusts of wind, even with a substantial stanchion holding the umbrella. From a risk benefit standpoint, no hotel will gamble on the integrity of any stanchion if it is foreseeable that gusts of winds may blow the umbrella over onto the guests. The Marriott ignored the standard of care and protocol followed by the other major hotels on St. Thomas and throughout North America. They also ignored the safety and welfare of Ms. Redler and other invitees.

15. The testing performed by the undersigned is well documented in the attached photographs and video. What the undersigned was able to document was the fact that it would have been impossible for Ms. Redler to open up and secure the umbrella that blew over and hit her in the right temple resulting in a concussion and permanent brain injuries. In addition, there were no written or oral warnings to Ms. Redler or anyone in her family that it was dangerous to be near an open umbrella that were being exposed to wind gusts that could easily blow the umbrella over. Therefore, the warnings and instructions associated with the hazard and risks known to the defendant were defective.

16. When the pole came down and hit Ms. Redler, the impact was extreme because of the design of the pole. The pole was round and the impact was extremely narrow in the temple area. The right temporal lobe is associated with a number of different functions including auditory perception, long-term memory, verbal memory, and emotional responses. The hippocampus the area of the brain involved in consolidating information from short-term memory into long-term memory is located in the temporal lobe. Her injury can also manifest itself resulting in visual perception disorders, difficulty attending to auditory and visual stimuli problems organizing and categorizing verbal materials and changes in sexual behavior. In addition, damage to the right temporal lobe could also result in a lack on inhibition when talking.

17. The testing performed by the undersigned did demonstrate that the force produced by the steel pole was more than enough to produce a severe concussion, a subdural hematoma and actually kill a young child. The defendant knew that similar umbrellas were being blown over by wind gusts well before Ms. Redler was traumatically injured. The Marriott Frenchman's Cove were owners and operators of

5

their resort in St. Thomas. Guests and invitees are supposed to be shown the highest duty of care; and the owners and management have a duty of inspecting the property of known, unknown, or should have known defects. In this case, the Marriott was well aware of the fact and had long been on notice that umbrellas are thrown over and can become a dangerous instrumentality and dangerous to guests at anytime. Marriott knew that umbrellas can be thrown down if they are not properly secured. In fact, rather than change them and secure them so they would not blow over or fall over, they were allegedly waiting for new concrete stanchions to arrive and be installed. Based upon these facts alone, the Marriott Frenchman's Cove willfully and intentionally exposed Ms. Redler to an enhanced and hidden risk that was known to Marriott, but not known and hidden from Ms. Redler. They never placed Ms. Redler on notice that their umbrellas were dangerous; and it, was foreseeable, based upon their experience, that the umbrellas can fall over and injure a guest at anytime. Therefore, in addition to their negligence and their disregard to the safety and welfare of Ms. Redler, their warnings and instructions were also defective. The Marriott management never placed Ms. Redler and her children on notice that the subject umbrella could easily fall down and severely injure her. They never told her that it would be safer to move away and not be in a vicinity because of the inherent danger and lack of integrity of the defectively designed stanchion.

18. The umbrella that severely and permanently injured Ms. Redler in this case, was defectively designed and should never have been used by the owners and management of Marriott Frenchman's Cove. The stanchion that it was placed in was defective in its design and could not be used in conjunction with the steel poled umbrella. It could not withstand foreseeable impacts with guests or gusts of wind. Every resort in the Caribbean and the United States, cruise lines throughout the world, and European and Far Eastern resorts always make sure that, through custom and practice, and through standard of care, the stanchion holding any type of an umbrella is able to withstand gusts of wind and guests inadvertently coming in contact with them. The owners and management of the Marriott Frenchman's Cove deviated from the standard of care throughout the Marriott chain and all of the other hotel chains by exposing Ms. Redler to an enhanced risk and hidden danger that resulted in her severe and permanent injuries. The Marriott Frenchman's Cove was directly responsible for all of Ms. Redler's injuries that can affect her quality of life for the rest of her life.

19. It is the opinion of the undersigned with a reasonable degree of safety engineering and scientific certainty that all of Ms. Redler's injuries that she received on April 15, 2012 were caused by the intentional and willful negligence of owners and management of the Marriott Frenchman's Cove as described in the body of this affidavit. Marriott knew that their umbrellas were blowing over and that the steel pole could easily and permanently injure a guest. In fact, they knew, or should have known, that the steel pole coming in contact with an individual's head and brain created an enhanced and hidden risk to Ms. Redler and other invitees if the support system for the umbrella failed. Marriott's blatant disregard of the safety and welfare of their guest, Ms. Redler, their lack of concern with her medical condition, and their lack of medical help within and outside the facility will affect Ms. Redler's quality of life for an extended period of time. Based on the fact that her brain injuries have continued for over 2

6

years is indicative that the brain will deteriorate prematurely resulting in additional neurological deficits at an early age.

20. Furthermore, Ms. Redler did not, in any way, contribute to her traumatic and permanent injuries.

21. I reserve the right to review any additional materials obtained through discovery to further document this report with reference to any opinions expressed in this report.

CARL J. ABRAHAM

7

Attachment A

# DR. C. J. ABRAHAM
3 BAKER HILL ROAD
GREAT NECK, NEW YORK 11023
5164825374
cjabraham1@aol.com
www.scientificadvisory.com

## EDUCATION & CERTIFICATIONS
- P. E. - Licensed Professional (Safety Engineer, CA)
- P.E. - Licensed Professional Engineer (State of Mississippi)
- CPC, CChE - Certified Professional Chemist & Chem. Engineer (National Inst. of Chemists & Chemical Engineers)
- FRSC, CChem - Chartered Chemist and Fellow (Royal Institute of Chemistry, London, England)
- LFAIC-Life Fellow, The American Institute of Chemists
- DEE, IH-Board Certified Environmental Engineer in the specialty of Industrial Hygiene, American Academy of Environmental Engineers
- FTI, Ctext-Fellow, The Textile Institute (Manchester, England)
- BCEE - Board Certified Environmental Engineer
- BCFE - Board Certified Forensic Examiner
- Certified - Arson Detection by the Federal Bureau of Alcohol, Tobacco and Firearms (U.S. Dept. of the Treasury)
- Certified - Chemical Engineer, Senior Member: #0118-003-3, The American Institute of Chemical Engineers
- Certified by The Steel Erectors Association of America in Connector Safety (OSHA Subpart R 1926.761(c)(2)) and Fall Hazards Safety (OSHA Subpart R 1926.761(b))
- Certified - Warnings & Instructions Specialist (University of Wisconsin-Madison, College of Engineering-1988)
- Certified in Motorcycle & Motor Scooter Safety and Operation
- Fellow - American College of Forensic Examiners
- Permanent Certification, University of the State of New York - Chem., Physics, Math, Gen. Science
- Board Certified Forensic Examiner in Chemistry and Chemical Engineering (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Safety Engineering and Design (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Fires and Explosions (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Industrial Hygiene (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Sports Safety (American Board of Forensic Examiners)
- Senior Classification Systems Safety Society
- Fellow of the Board—American Board of Forensic Examiners
- Diplomate in Forensic Engineering—American Board of Forensic Engineering and Technology (Lifetime)
- Professional Member - American Society of Safety Engineers
- Senior Grade - Systems Safety Society
- MS, PhD, DSc, JD

8

30579.00/000353

## AREAS OF EXPERTISE (Technical)

1. Experience in new product development, manufacturing, packaging, standards, warnings and instructions.
2. Extensive experience in the identification, elimination and control of hazards to people and property. This includes the development, establishment, manufacturing, construction, assembly, testing, operation, training and procedures including manuals, environmental engineering and industrial hygiene, warnings & instructions for consumer and industrial products.
3. Authority in the fields of products liability, OSHA, Labor Law (Industrial Code), architectural safety, safety engineering and construction accidents.
4. Lectured and taught at various universities in the United States and Europe.
5. Evaluated the cause of many brain injuries as a result of accidents nationally and internationally.
6. Published and presented papers in the areas of fires, explosions (gas, bottle, battery), plastics, toxic torts, flammable fabrics, safety engineering and design, sports safety, household and industrial product safety, industrial equipment, warnings and instructions for both industrial and consumer products.
7. Patentee of many products, including protective headgear (face mask used in football - licensed to Riddell), enhancement of energy absorption for protective headgear and equipment, safety shields for batteries, insulation materials used on missiles, household products, and non-toxic insect repellents worldwide. Copyright Registrations in the areas of battery warnings and instructions, toxic materials, household products and insect repellents.
8. Experienced in animal and human health products, new product development, EPA, product data specifications, testing and analysis.
9. Diplomate-American Board of Forensic Examiners in Safety & Safety Engineering.
10. Member (former) of the Advisory Board -World Congress on Industrial, Technical, and High Performance Textiles (Great Britain); former member of the Advisory Board - American Board of Engineering and Technology (USA).
11. Member, Architectural Review Board, Village of Great Neck, Great Neck, NY.
12. Member-ISO/TC 181/SC: Safety of Toys.
13. Member of the ASTM, (1964-present).
14. Over 100 publications and presentations.
15. Patentee of products produced and used throughout the world (over 38).
16. Consulted to ABC and CBS News, Eyewitness News (ABC), USA Today and the Discovery Channel.
17. Consulted to the Department of Agriculture (Bureau of Mines).
18. Consulted to the National Highway Traffic Safety Administration (NHTSA).
19. Consulted to the Department of Labor (OSHA).
20. Consulted to NIOSH (National Institute for Occupational Safety and Health).
21. Consultant on Warnings & Instructions to the Unified Abrasives Manufacturer's Association.
22. Consultant to Microsoft-Kinesiology Studies, Human Movements and Muscle Activity Impacts, Warnings and Instructions
23. Consulted to Wave Loch, Inc. (manufacturer of the Flow Rider)
24. Consulted to Hudson Bay stores, Canada in risk assessment and human factors.
25. Consulted to Home Depot in risk assessment and human factors.
26. Consulted to Big Lots Stores, Inc. on display safety.
27. Consulted to the American Textile Company (warnings & instructions).
28. Consulted to Estwing Manufacturing Co. (warnings and instructions).
29. Consulted to the Long Island Railroad;
30. Consulted to the New York Transit;
31. Consulted to the Queensborough Bridge Authority;

9

32. Consultant for the Kaprun fire disaster case (Austria);
33. Consultant to Intamin AG (Switzerland-roller coasters);
34. Consulted to Family Dollar Stores (safety of products);
35. Consulted to Northern Lights (mfg. of fitness equipment – safety engineering & design)
36. Consulted to Sherwin Williams;
37. Consulted to Walter Kidde (fire extinguishers);
38. Consulted to Kohl's Department Stores (retail displays and safety);
39. Consulted to The Thompson's Company-Water Seal Product;
40. Consulted to The London Hotel, NYC, ADA (American Disability Act) evaluation;
41. Consulted to Reliable Bakery (Brooklyn) - Safety & OSHA;
42. Consultant to Win Win Printing, Inc. – OSHA compliance and employee training
43. Consulted to Hamaco Industries Corporation.  A Japanese manufacturer of material handling equipment such as mechanical and electric lift tables.  Preparation of warnings and instructions for lifts and creations of warnings and instructions for service and user manuals.
44. Consulted to CBS TV News, New York on 10-15-2013.  Analysis of the safety protocol related to retail stores and stacking shelves with merchandise. (televised 10-31-13, 11 p.m.)
45. Consulted to Tylo Helo (Tylö AB), the largest sauna (dry and steam) company in the world.
46. Consulted to EBRU TV: Fresh Outlook, May 17, 2014, Soma, Turkey (Mine Explosion in Turkey)
47. Consulted to Transpo Industries, Inc.
48. Consulted to Landscape Forms, Inc.
49. Consulted to the Office of the United States Attorney
50. Consulted to Tuff Stuff Fitness Equipment, Inc.
51. Consulted to City of San Diego, CA (Playground safety)
52. Consulted to Blue World Pools

PROFESSIONAL EXPERIENCE (Sports & Recreation)
➢ Diplomate-American Board of Forensic Examiners in Sports and Recreational Safety
➢ Former Director of Sports, Recreation & the Athletics Division of a national consulting firm for twenty-eight years.
➢ Experienced in the identification, elimination, and control of hazards in recreation facilities, parks and school environments.
➢ Directly involved with sports & recreation safety standards, safety and design analysis of protective equipment, consumer products, warnings and instructions.
➢ Evaluated and tested every type of protective headgear in contact and collision sports.
➢ Consulted on a large number of brain injury cases in contact and collision sports and have made presentations at national and international conventions in the area of concussive and sub-concussive brain injuries.
➢ Member of the Executive Committee and consultant in the area of engineering and human factors to the Hockey -Equipment Certification Council (HECC) (1980-1998)
➢ U.S. Delegate-International Standards Organization (ISO) (1988-1998)
➢ Member Safety & Protective Equipment Committee (SPEC) of USA Hockey (1996-2008)
➢ Member of the ASTM, (1964-present).
➢ Inventor of the Bio-Lite football facemask licensed to Riddell
➢ Inventor of the ForceField FF Headband (www.forcefieldheadbands.com)
➢ USPTA-certified tennis instructor (United States Professional Tennis Association)
➢ Creator of warnings and instructions for many sports products
➢ Consulted to municipalities on park & recreation facilities, and Set Makers, Inc., the manufacturer of recreation facilities for Burger King and McDonald's restaurants.
➢ Consulted to Lobster, Inc. on safety and warnings (High speed tennis machine)
➢ Consulted to various municipalities on park, recreation safety and swimming pools

10

- ➢ Tested and evaluated every type of protective sports head gear
- ➢ Consultant to Microsoft-Kinesiology Studies, Human Movements and Muscle Activity Impacts, Warnings and Instructions
- ➢ Consulted to Wave Loch, Inc. (manufacturer of the Flow Rider)
- ➢ Consultant to Intamin AG (Switzerland-roller coasters);
- ➢ Consulted to Northern Lights (mfg. of fitness equipment – safety engineering & design)
- ➢ Consulted to ABC and CBS on Amusement Park accidents
- ➢ Consulted on safety of activities on amusement parks including water parks (Splish Splash, Suffolk County, NY, Coney Island, Six Flags and Disney World)
- ➢ Consulted on cruise lines with safety of their recreational activities and exercise equipment
- ➢ Consulted to Chuck E Cheese on the safety of their amusement facility
- ➢ Consulted to ABC affiliates, KGTV News, in West Palm Beach, Florida and San Diego, California on the Safety of Playgrounds and Playground Activities http://www.10news.com/news/investigations/safety-consultant-finds-various-problems-at-san-diego-public-parks and http://www.10news.com/news/investigations/10news-report-spurs-changes-at-san-diego-public-parks
- ➢ Consulted on cases involving amusement parks, roller coasters, tennis pitching machines, exercise machines, recreational facilities for McDonalds and Burger King, lazar facilities, residential playgrounds, safety in indoor and outdoor basketball courts, bleacher safety, natural versus synthetic surfaces, headgear for sports, baseball base design, golf carts, ice hockey facilities, cruise line recreational activities (i.e. wave runners, track and exercise equipment), and many others.
- ➢ Consulted to City of San Diego, CA (Playground safety)

*FOR LIST OF PUBLICATIONS AND PATENTS REFER TO*
**WWW.SCIENTIFICADVISORY.COM**

## PROFESSIONAL ASSOCIATIONS

- National Society of Professional Engineers
- New York State Society of Professional Engineers
- Queens Chapter, Society of Professional Engineers
- American Academy of Environmental Engineers, Diplomate
- American Industrial Hygiene Association (Full Membership)
- Royal Society of Chemistry (London), Fellow
- The Textile Institute, Fellow (Manchester, England)
- National Fire Protection Association
- Society of Civil Engineers
- Human Factors and Ergonomics Society
- American Society of Safety Engineers (Professional Member)
- Systems Safety Society - Senior Grade
- Standards Engineering Society
- American National Standards Institute (ANSI)
- American Society of Mechanical Engineers (9073529)
- Society of Automotive Engineers
- American Chemical Society (over 50 years)
- The American Institute of Chemical Engineers (Senior Member)
- Society of Plastics Engineers
- American Association of Textile Chemists and Colorists (AATCC)
- American Board of Forensic Examiners
- Human Factors and Ergonomics Society
- United States Professional Tennis Association (certified tennis instructor)
- International Code Council
- American Society for Testing and Materials: ASTM (1964- to present)

30579.00/000356

C-8 Refractories;
C-14 Glass & Glass Products;
C-01 Cement
D-1 Paint, Varnish, Lacquer & Related Products;
D-9 Electrical Insulating Materials;
D-12 Soaps & Other Detergents;
D-13 Textiles;
D-13.52 Flammability
D-14 Adhesives;
D-19 Water;
D-20 Plastics;
D-21 Polishes;
D-26 Halogenated Organic Solvents;
D-30 High Modulus Fibers and their Composites;
E-5 Fire Tests of Materials and Construction;
E-7 Non-destructive Testing;
E-15 Analysis & Testing of Industrial Chemicals;
E-17 Skid Resistance;
E-20 Temperature Measurement, Chemicals;
E-27 Hazard Potential of Chemicals;
E-30 Forensic Sciences; E-34 Occupational Health & Safety Aspects of Materials,
Physical & Biological Agents;
E-28 Mechanical Testing;
F-8 Sports Equipment & Facilities;
F-9 Tires;
F-13 Safety & Traction of Footwear;
F-15 Consumer Product Safety;
F-23 Protective Clothing;
F-27 Snow Skiing
 F-08 on Sports Equipment and Facilities
F08-Main Committee
F08-10 Bicycles
F08-11 In-Line Skating
F08-12 Wrestling and Gymnastics
F08-13 Fencing Equipment
F08-15 Ice Hockey
F08-16 Archery Products
F08-17 Trampolines and Related Equipment
F08-18 Golf Clubs and Shafts
F08-19 Bicycle Accessories
F08-21 Climbing and Mountaineering
F08.22 Camping Equipment;
F08-23 Tennis Courts and Running Tracks
F08-24 Paintball and Equipment
F08-25 Residential Basketball Equipment
F08-26 Baseball and Softball
F08-30 Fitness Products
F08-51 Medical Aspects and Biomechanics
F08-52 Playing Surfaces and Facilities
F08-52.1 Task Group Playground Surfacing
F08-53 Headgear and Helmets
F08-54 Athletic Footwear
F08-55 Body Padding
F08-56 Facilities-Baseball and Softball
F08-57 Eye Safety for Sports
F08-61 Ice Hockey Rinks

12

30579.00/000357

F08-63 Playground Surfacing Systems
F08-64 Natural Playing Surfaces
F08-65 Artificial Turf Systems
F24 on Amusement Rides and Devices
F24-10 Test Methods
F24-20 Specifications and Terminology
F24-24 Design and Manufacture
F24-30 Maintenance and Inspection
F24-40 Operations
F24-60 Special Rides & Attractions
F15  Consumer Products
F15-    Aquatic Play Equipment
F15-29 Public Playground Equipment
F15-36 Soft Contained Play Equipment
F15-44 Play Equipment for Children Under Two

**Additional qualifications in the area of recreation, recreation facilities, recreational products and recreational/sports protective/exercise equipment**

a. Licensed P. E. and Certified Safety Engineer
b. Licensed Professional Engineer with a specialty in Safety Engineering and Design
c. Diplomate in Sports and Recreation Safety (Over 42 years of consulting experience in the areas of safety on sports and recreation
d. Formerly the founder and Associate Director of the Sports and Recreation Safety Division of a national consulting company for twenty-eight years (Inter-City Testing & Consulting Corporation)
e. Member of the ASTM from 1964 to the present time involved directly in creating safety standards for residential and commercial (public) playgrounds.
f. Certified in warnings and instructions-created warnings and instructions for many products
g. Consulted to municipalities throughout the United States and Canada in safety in their parks and playgrounds (Boston, MA; Brockton, MA; New York City; Brooklyn; Nassau County and London, Canada to name a few)
h. Presented seminars to the graduating class of mechanical engineers at Columbia University School of Mechanical Engineering covering subjects relating to safety and design of playground activities and exercise equipment
i. Consulted to ABC and CBS on amusement park accidents
j. Consulted to WPTV, Channel 5, Florida on the safety of public recreational facilities for children
k. Consulted on the safety of activities at amusement parks including water parks (Splish Splash in Suffolk County, Coney Island, Six Flags, Chuck E Cheese and Disney World)
l. Consulted on cruise lines with reference to safety of their recreational activities and exercise equipment
m. Consulted to Wave Runners (Wave Loch Inc.)
n. Consulted on tennis pitching machines (Lobster Inc.)
o. Consulted on McDonald's and Burger King's children's play area
p. Member of the ASTM committee on the safety of paintball facilities
q. Member of the Executive Committee and consultant in the area of engineering and human factors to the Hockey –Equipment Certification Council (HECC) (1980-1998)
r. U.S. Delegate-International Standards Organization (ISO) (1988-1998)
s. Member Safety & Protective Equipment Committee (SPEC) of USA Hockey (1996-2008)
t. Inventor of the Bio-Lite football facemask licensed to Riddell
u. Inventor of the ForceField FF Headband www.forcefieldheadbands.com)
v. Creator of warnings and instructions for many sports products
w. Consulted to Intamin AG (Switzerland - rollercoasters)
x. Consulted to Northern Lights (manufacturer of fitness equipment)

13

y. Consulted to MicroSoft - Kinesiology Studies, Human Movements and Muscle Impacts, Warnings and Instructions
z. Consulted on cruise ships with reference to the safety of their activity areas for passengers.
aa. Consulted on news programs on the safety of public playgrounds
bb. Consulted for Chuck E Cheese with reference to the safety of the activities in their activity center.
cc. Presentations made throughout the United States and Europe on sport injuries to both children and adults.
dd. I was the founder and CEO of Inter-City Testing & Consulting Corp., a national company from 1970 to 1998. In that capacity I directed the consulting, testing, reconstruction and evaluation of a variety of sports and recreation facility cases. Among the cases I consulted on and evaluated were a large number of fitness equipment accidents.

# Dr. C. J. Abraham's experience in the areas of fires and explosions

a) Kaprun fire disaster case in Austria
b) Coal barbeque starter
c) Cigarette lighters
d) Paint thinners
e) Flammable sprays
f) Hair sprays
g) Hair treatment
h) Flammable fabrics
i) Automobile battery explosions
j) Gasoline fires and explosions
k) Dust explosions
l) Spontaneous combustion cases
m) Gas tank explosions
n) Propane tank- truck supply fires
o) Vapor explosions from varnishes, paints, floor finishers
p) Total release sprays
q) 55 gallon drums/cutting them in ½ explosions filled with explosive vapor
r) Exploding automobile tires with isopropane/butane emergency-temporary fill
s) Aerosols - flash back
t) Paints
u) Dept. of Agriculture Bureau of Mines
v) Spontaneous combustion
w) Exploding automobile batteries
x) Fireworks
y) Fireworks manufacturing facility
z) Gasoline tanks explosions
aa) Gasoline containers
bb) Propane tank explosions (pool heater and household use)
cc) Chemical tanker explosions
dd) Power plant explosions
ee) Ship explosions
ff) House explosion due to natural gas leaking from supply pipes from street to basement
gg) Static electricity discharge- fires and explosions
hh) High voltage discharge
ii) Household product fires
jj) Natural gas leaks- fires and explosions
kk) Trailer home fires and explosions
ll) Deflagration of plastic containers containing flammable liquids

14



30579.00/000360



12/11/2014

30579.00/000361



12/11/2014

30579.00/000362

## SCHEDULE OF FEES FOR DR. C. J. ABRAHAM
### 3 Baker Hill Road
### Great Neck, Long Island
### New York 11023
### 516-482-5374
http://www.scientificadvisory.com/
cjabraham1@aol.com
**TAX ID# 11-3517097**

**CONSULTATION ON CASES**                              **$250/HOUR**

**RETAINER FOR EACH CASE   $3,500 (Accompanied with all of the discovery material, Complaint, Bill if Particulars, Interrogatories, depositions, labels, reports, etc.) Charged off at $250/hour.**

**DEPOSITIONS       $4,500 PER DAY OR ANY PART THEREOF PLUS**
**PREPARATION TIME AND ALL TRAVEL COSTS. (Pre-pay hotel;**
**No charge per hour while traveling by plane)**

**TESTIMONY       $4,500 PER DAY OR ANY PART THEREOF PLUS**
**PREPARATION TIME AND ALL TRAVEL COSTS. (Pre-pay hotel;**
**No charge per hour while traveling by plane)**

**PAYMENT FOR DEPOSITIONS AND/OR TESTIMONY MUST BE RECEIVED 10 BUSINESS DAYS PRIOR TO THE SCHEDULED DEPOSITION/TESTIMONY**

**If air travel is required for al deposition/testimony, arrival will be the day prior to the scheduled deposition/testimony. There is no charge for the traveling time or day unless and until consultation is scheduled after arrival and before the deposition/testimony.**

**THE PROTOCOL STATED ABOVE HAVE BEEN FOLLOWED FOR 39 YEARS THROUGHOUT NORTH AMERICA, EUROPE AND THE CARIBBEAN ISLANDS FOR PLAINTIFF AND DEFENSE ATTORNEYS, INSURANCE COMPANIES, CORPORATE CLIENTS, MUNICIPALITIES AND THE FEDERAL GOVENMENT**



12/11/2014

30579.00/000364