# Exhibit "D"

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
*******************

| | |
|---|---|
| JESSYCA REDLER; BRYAN REDLER, | Case No. 3:14-cv-00017-CVG-RM |
| Plaintiffs, | Action for: Negligence/Personal Injury; Breach of Contract |
| v. | Jury Trial Demand |
| MARRIOTT OWNERSHIP RESORTS (ST. THOMAS) INC. d/b/a MARRIOTT FRENCHMAN'S COVE, | |
| Defendant. | |

## PLAINTIFF'S DISCLOSURE OF EXPERT WITNESS AND REPORT

COME NOW the Plaintiffs, **Jessyca Redler and Bryan Redler,** by and through their undersigned counsel the, **Law Offices of Karin A. Bentz, P.C.** (Karin A. Bentz, Esq. and Gregory Adam Thorp, Esq.), and discloses their expert witness, attaching the expert witness' report.

Dr. C. J. Abraham
3 Baker Hill Road
Great Neck, New York 11023

Dr. Abrham's written report, which contains the information required by Rule 26(a)(2)(B)(i)-(vi), is attached hereto as Bates Nos. 000132 - 0000135, 000137- 000143 and 000264 also contains his curriculum vitae and fee schedule.

Respectfully submitted,
**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: November 3, 2014

Karin A. Bentz, Esq. (VI Bar No. 413)
Gregory Adam Thorp, Esq. (VI Bar No. 1117)
32B Dronningens Gade, Suite XB
5332 Raadets Gade, Suite 3
St. Thomas, Virgin Islands 00802
Telephone: 340-774-2669
Telecopier: 340-774-2665
Email: kbent@virginlaw.com
        athorp@virginlaw.com

Redler v. Marriott Int'l
Expert Witness Disclosure

Case No. 3:14-cv-00017-CVG-RM
Page 2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of November, 2014, I caused a true and correct copy of the foregoing to be served, *via electronic mail* upon:

Hamilton, Miller & Birthisel LLP
Attn: Niva M. Harney-Hiller, Esq. LL.M.
150 Southeast 2nd Avenue, Suite 1200
Miami, Florida 33131
Email: nharney@hamiltonmillerlaw.com
(305) 379-3686 Office (ext. 228)
(305) 379-3690 Facsimile



## SCIENTIFIC ADVISORY SERVICES, Ltd.

3 Baker Hill Road
Great Neck, New York 11023
Tel  516-482-5374    -    516-482-1231 fax
email  cjabraham1@aol.com
www.scientificadvisory.com

August 12, 2013

Karin A. Bentz, Esq.
% Law Offices of Karin A. Bentz, P.C.
5150 Dronningens Gade – Suite 10
St. Thomas, VI 00802

Re: Jessyca Redler and Bryan Redler vs. Marriott Frenchman's Cove

I am a Diplomate in Sports and Recreation Safety and a licensed professional engineer
specializing in safety engineering and design.  I am also a safety specialist certified in
safety, warnings and instructions for forty years.  I have been qualified as a specialist in
recreation facilities, exercise facilities and equipment, playgrounds, pool and water parks
safety with an emphasis on the standard of care and protocol used in a variety of activities,
including, but not limited to, the safety of placing accessory accoutrements such as
umbrellas, lounges, tables, etc. or guests at spas and health facilities.  In addition, the
undersigned has over 40 years of experience in the safety protocol for guests at private golf
and tennis clubs and facilities, cruise lines including, hotels and recreational clubs located
adjacent to beaches and lounge areas adjacent to pools.  A copy of my curriculum vitae is
attached as Schedule A.

In addition to the above, I have over 40 years of experience in head and brain injuries in
sports and have published and presented papers on head and brain injuries throughout the
United States, Canada and Europe.  Furthermore, the undersigned is experienced and
familiar with the protocol used by the Marriott Hotels in the United States, the Caribbean,
Europe and the Middle East having also experienced  management following  specific
protocol for hotel guests requiring medical treatment.

I reviewed the photographs associated with the subject case and submitted to Liberty
Mutual Insurance Company in their Demand Letter to Jennifer Coe, Claims Case
Manager II for Liberty Mutual.  My familiarity with the subject case, facts, circumstances,
and details surrounding the subject accident, is based fully on the photographs and the
facts as provided by Jessyca Redler's attorney.

On Sunday, April 15, 2013, the second day of Ms. Redler's vacation she was sitting on a
lounge chair by the pool with one of her twin daughters on the premises of the Marriott
Frenchman's Cove resort.  At approximately 11:45 in the morning, Ms. Redler's daughter
asked her for a snack.  As she leaned over to retrieve her bag, the next thing she knew is
that she heard and felt a loud pop.  She doesn't remember anything except that a man

1

named Scott was asking her if she could stand up because he could not lift a large shade umbrella that was previously supported by a steel pole placed in a stanchion. When the umbrella came down the steel pole struck Ms. Redler in her right temple and right eye causing her to lose consciousness. When she came to, she had blurred vision and extreme pain in her head and eye.

The loss prevention representative at the Marriott Frenchman's Cove completed the incident report with her and then admitted to her that the stability of the umbrellas was a problem that the Marriott Hotel was aware of and they were solving the problem by securing the umbrellas with new cement bases. It is important to note the following:

a. A management and loss prevention representative of the Marriott was on notice that the steel pole of the umbrella struck Ms. Redler's head and she was knocked unconscious.

b. The management of the Marriott, through the loss prevention representative, knew, or should have known, that Ms. Redler received a concussion.

c. The management knew, or should have known, that any of their guests receiving a concussion needed medical assistance. That is the protocol followed by other Marriott Hotels throughout the United States and the Caribbean.

d. The Marriott management knew, or should have known, that any delay in the medical management of a concussion will exacerbate the pre-existing injury resulting in additional damage to the brain with residual after effects and a longer recuperation period.

e. The exacerbation of Ms. Redler's concussion was manifested at approximately 8 p.m. on the date of the accident. Her headache was so sever and painful that she had to go to the emergency room of Schnider Hospital on St. Thomas.

f. After being diagnosed by Dr. Wakil, she suffered from dizziness, nausea, sever head pain, anxiety, tightness in her chest, lightheadedness, fatigue, and irritability. All of those are symptoms of a post concussive syndrome. She also suffered from blurred vision and extreme pain in her left groin and hip. She was not able to fly back home because the change in air pressure would be dangerous and cause further deterioration of her brain.

g. It is very important to note that there is no such thing as a "mild traumatic brain injury." A concussion is a concussion, and there is no differentiation as to designating the level of a concussion.

h. By the end of August, the pain in her left side where she was hit by the steel pole became unbearable in her hip area. A cortisone shot did not help. She was diagnosed with hip flexor strain and bursitis. An MRI also documented avulson injury of her gluteus minimus tendon which is the tendon that connects her gluteus minimus muscle to her
bones. The tendon was torn away from the bone. Because of the severe pain of her hip

2

30579.00/000133

area, it significantly affected her sleep in addition to the effect that her brain injury had on her sleep as well.

i.  It is predicted, based upon the 40 plus years of experience of the undersigned in sub-concussive and concussive brain injuries, that Ms. Redler will continue to have residual problems that she is currently complaining of affecting the quality of her life for many years to come.  In fact, based upon the severe injury she experienced, she may experience Alzheimer's, neurological deficits, Parkinson's and other problems at an early age well before she reaches the geriatric part of her life.

j.  It is a known fact that, restaurants with chairs, tables, and umbrellas outside; resorts throughout the world; spas; and hotels fold and tie up their umbrellas whenever there is a danger of the umbrella being thrown over due to gusts of wind, even with a substantial stanchion holding the umbrella.  From a risk benefit standpoint, no hotel will gamble on the integrity of any stanchion if it is foreseeable that gusts of winds may blow the umbrella over onto the guests.

The Marriott Frenchman's Cove were owners and operators of their resort in St. Thomas. Guests and invitees are supposed to be shown the highest duty of care; and the owners and management have a duty of inspecting the property of known, unknown, or should have known defects.  In this case, the Marriott was well aware of the fact and had long been on notice that umbrellas are thrown over and can become a dangerous instrumentality and dangerous to guests at anytime.  Marriott knew that umbrellas can be thrown down if they are not properly secured.  In fact, rather than change them and secure them so they would not blow over or fall over, they were allegedly waiting for new concrete stanchions to arrive and be installed.  Based upon these facts alone, the Marriott Frenchman's Cove willfully and intentionally exposed Ms. Redler to an enhanced and hidden risk that was known to Marriott, but not known and hidden from Ms. Redler.  They never placed Ms. Redler on notice that their umbrellas were dangerous; and it, was foreseeable, based upon their experience, that the umbrellas can fall over and injure a guest at anytime.  Therefore, in addition to their negligence and their disregard to the safety and welfare of Ms. Redler, their warnings and instructions were also defective.  The Marriott management never placed Ms. Redler and her children on notice that the subject umbrella could easily fall down and severely injure her.  They never told her that it would be safer to move away and not be in a vicinity because of the inherent danger and lack of integretity of the defectively designed stanchion.

The umbrella that severely and permanently injured Ms. Redler in this case, was defectively designed and should never have been used by the owners and management of Marriott Frenchman's Cove.  The stanchion that it was placed in was defective in its design and could not be used in conjunction with the steel poled umbrella.  It could not withstand foreseeable impacts with guests or gusts of wind.  Every resort in the Caribbean and the United States, cruise lines throughout the world, and European and Far Eastern resorts always make sure that, through custom and practice, and through standard of care,  the stanchion holding any type of an umbrella is able to withstand gusts of wind and guests inadvertently coming in contact with them. The owners and management of the Marriott Frenchman's Cove deviated from the standard of care throughout the Marriott chain and

3

all of the other hotel chains by exposing Ms. Redler to an enhanced risk and hidden danger that resulted in her severe and permanent injuries. The Marriott Frenchman's Cove was directly responsible for all of Ms. Redler's injuries that can affect her quality of life for the rest of her life.

It is the opinion of the undersigned with a reasonable degree of safety engineering and scientific certainty that all of Ms. Redler's injuries that she received on April 15, 2012 were caused by the intentional and willful negligence of owners and management of the Marriott Frenchman's Cove as described in the body of this affidavit. Marriott knew that their umbrellas were blowing over and that the steel pole could easily and permanently injure a guest. In fact, they knew, or should have known, that the steel pole coming in contact with an individual's head and brain created an enhanced and hidden risk to Ms. Redler and other invitees if the support system for the umbrella failed. Marriott's blatant disregard of the safety and welfare of their guest, Ms. Redler, their lack of concern with her medical condition, and their lack of medical help within and outside the facility will affect Ms. Redler's quality of life for an extended period of time. There is no prediction as to when all of the residual effects of her injury will dissipate or manifest into neurological deficits at an early age.

Furthermore, Ms. Redler did not, in any way contribute to her traumatic and permanent injuries.

I reserve the right to review any additional materials obtained through discovery to further document this report with reference to any opinions expressed in this report.

Dr. C.J. Abraham

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF
NEW YORK THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED THIS 10TH DAY OF JULY 2013
AT GREAT NECK, NEW YORK.

CARL J. ABRAHAM
SWORN TO BEFORE ME THIS 10TH DAY OF JULY 2013

SHARON G. BICKLER
No. 30-4753797
Qualified in Nassau County
Cert. filed in Westchester County
Commission Expires Nov. 30, 2013
NOTARY PUBLIC

4

30579.00/000135

5

30579.00/000136

## SCHEDULE A

### DR. C. J. ABRAHAM
**3 BAKER HILL ROAD**
**GREAT NECK, NEW YORK 11023**
**5164825374**
**cjabraham1@aol.com**
**www.scientificadvisory.com**

### EDUCATION & CERTIFICATIONS
- P. E. - Licensed Professional (Safety Engineer, CA)
- P.E. - Licensed Professional Engineer (State of Mississippi)
- CPC, CChE - Certified Professional Chemist & Chem. Engineer (National Inst. of Chemists & Chemical Engineers)
- FRSC, CChem - Chartered Chemist and Fellow (Royal Institute of Chemistry, London, England)
- LFAIC-Life Fellow, The American Institute of Chemists
- DEE, IH-Diplomate, American Academy of Environmental Engineers, Industrial Hygiene Engineer
- FTI, Ctext-Fellow, The Textile Institute (Manchester, England)
- BCEE - Board Certified Environmental Engineer
- BCFE - Board Certified Forensic Examiner
- Certified - Arson Detection by the Federal Bureau of Alcohol, Tobacco and Firearms (U.S. Dept. of the Treasury)
- Certified - Chemical Engineer, Senior Member: #0118-003-3, The American Institute of Chemical Engineers
- Certified by The Steel Erectors Association of America in Connector Safety (OSHA Subpart R 1926.761(c)(2)) and Fall Hazards Safety (OSHA Subpart R 1926.761(b))
- Certified - Warnings & Instructions Specialist (University of Wisconsin-Madison, College of Engineering-1988)
- Certified in Motorcycle & Motor Scooter Safety and Operation
- Fellow - American College of Forensic Examiners
- Permanent Certification, University of the State of New York - Chem., Physics, Math, Gen. Science
- Board Certified Forensic Examiner in Chemistry and Chemical Engineering (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Safety Engineering and Design (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Fires and Explosions (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Industrial Hygiene (American Board of Forensic Examiners)
- Board Certified Forensic Examiner in Sports Safety (American Board of Forensic Examiners)
- Senior Classification Systems Safety Society
- Fellow of the Board—American Board of Forensic Examiners
- Diplomate in Forensic Engineering—American Board of Forensic Engineering and Technology (Lifetime)
- Professional Member - American Society of Safety Engineers
- Senior Grade - Systems Safety Society

6

30579.00/000137

> ➤ **MS, PhD, DSc, JD**

<u>AREAS OF EXPERTISE (Technical)</u>

1. Experience in new product development, manufacturing, packaging, standards, warnings and instructions.
2. Extensive experience in the identification, elimination and control of hazards to people and property. This includes the development, establishment, manufacturing, construction, assembly, testing, operation, training and procedures including manuals, environmental engineering and industrial hygiene, warnings & instructions for consumer products.
3. Authority in the fields of products liability, OSHA, Labor Law (Industrial Code), ADA, safety and safety engineering, and construction accidents.
4. Contributing author to the PRODUCT DEFECT HANDBOOK.
5. Lectured and taught at universities in the United States and Europe.
6. Published and presented papers in the areas of fires, explosions (gas, bottle, and battery), plastics, toxic torts, flammable fabrics, safety engineering and design, sports safety, household and industrial product safety, industrial equipment, warnings and instructions for both industrial and consumer products.
7. Certified by The Steel Erectors Association of America in Connector Safety (OSHA Subpart R 1926.761(c)(2)); Fall Hazards Safety (OSHA Subpart R 1926.761(b)); Safe Erection of Open Web Steel Joist and Joist Girders and Handling Structural Steel.
8. Patentee of many products, including protective headgear (face mask used in football – licensed to Riddell), enhancement of energy absorption for protective headgear and equipment, safety shields for batteries, insulation materials used on missiles, household products, non-toxic insect repellents and the ForceField headgear/headband. Copyright Registrations in the areas of battery warnings and instructions, toxic materials, household products and insect repellents.
9. Experienced in golf cart accidents, operation and design.
10. Experienced in amusement park activities and water park activities, operation, and safety.
11. Experienced in head injury, brain injury and head trauma cases.
12. Experienced in helmet testing and evaluation, head protection and analysis in all types of cases.
13. Experienced in animal and human health products, new product development, EPA, product data specifications, testing and analysis.
14. Experienced in architectural analysis (residential and commercial) including concrete slab composite structures for sidewalks, parking and streets including asphalt.
15. Consultant to NIOSH (peer review research proposals for research and new OSHA safety standards)
16. Consulted to ABC and CBS News, Eye Witness News and the Discovery Channel.
17. Consulted to the Department of Agriculture (Bureau of Mines).
18. Consulted to the National Highway Traffic Safety Administration (NHTSA).
19. Consulted to the Department of Labor (OSHA).
20. Consulted to construction companies in the area of safety for their employees applying OSHA and ANSI standards for high elevations;
21. Consultant on Warnings & Instructions to the Unified Abrasives Manufacturer's Association.
22. Consultant to Microsoft-Kinesiology Studies, Human Movements and Muscle Activity Impacts, Warnings and Instructions
23. Consulted to the American Textile Company (warnings & instructions).
24. Consulted to Sherwin Williams
25. Consulted to The Thompson's Company-Water Seal Product

7

30579.00/000138

26. Consulted to the Long Island railroad
27. Consulted to the New York Transit
28. Consulted to the Queensborough Bridge authority
29. Consulted to the Department of Agriculture, Bureau of Mines
30. Consulted to Wave Loch, Inc. (manufacturer of the Flow Rider)
31. Consulted to Intamin AG, Switzerland, manufacturer of roller coasters
32. Consultant to the estates of the deceased and the foreigners that escaped in the Kaprun fire disaster case in Kaprun, Austria.
33. Consulted to The Guidance Group (creator of educational toys)
34. Consulted to Northern Lights (manufacturer of fitness equipment – safety engineering & design)
35. Member (former) of the Advisory Board -World Congress on Industrial, Technical, and High Performance Textiles (Great Britain)
36. Member (former) of the Advisory Board-American Board of Engineering and Technology (USA)
37. Architectural Review Board, Village of Great Neck, Great Neck, NY (1995-2009)
38. Lectured and/or taught at universities in the United States and Europe
39. Consultant - Risk and human factors consultant to Hudson Bay stores, Canada
40. Consultant - Risk and human factors consultant to The Home Depot, Inc.
41. Consulted to a number of chain stores in the area of safety in retail stores
42. Consultant - Warnings & Instructions to the Unified Abrasives Manufacturers Association
43. Consultant in Warnings & Instructions to Estwing Manufacturing Co. (manufacturer of tools)
44. Consultant to Win Win Printing, Inc. – OSHA compliance and employee training
45. United States Member of ISO/TC 181/SC- Safety/Manufacture of Toys. Safety testing, technical regulations, quality control, packaging, testing, packaging, warnings and instructions
46. Consulted to Lobster, Inc. on safety and warnings (High speed tennis machine)
47. Consulted to various municipalities on park, recreation safety and swimming pools
48. Consultant to Hamaco Industries Corporation. A Japanese manufacturer of material handling equipment such as mechanical and electric lift tables. Preparation of warnings and instructions for lifts and creations of warnings and instructions for service and user manuals.
49. Tested and evaluated every type of protective sports head gear.
50. Member of the ASTM, (1964-present)
51. Over 30 years of experience with EU Directives, ISO, ASTM, ANSI, NEMA, NFPA, UL, OSHA for a large variety of products, including but not limited to recreational facilities, toys, playgrounds, personal household products, textiles, etc.
52. Lectured and taught at various universities in the United States and Europe.
53. Consulted to various municipalities on park, recreation safety and swimming pools
54. Diplomate-American Board of Forensic Examiners in Safety & Safety Engineering.
55. Member (former) of the Advisory Board -World Congress on Industrial, Technical, and High Performance Textiles (Great Britain); former member of the Advisory Board - American Board of Engineering and Technology (USA).
56. Over 100 publications and presentations.
57. Consulted to Big Lots Stores, Inc. on display safety.
58. Consulted to Family Dollar Stores (safety of products);
59. Consulted to Walter Kidde (fire extinguishers);
60. Consulted to Kohl's Department Stores (retail displays and safety);
61. Consulted to The Thompson's Company-Water Seal Product;
62. Consulted to The London Hotel, NYC, ADA (American Disability Act) evaluation;
63. Consulted to Reliable Bakery (Brooklyn) - Safety & OSHA;

30579.00/000139

64. Consulted to Attorney General's Office for the State of New York, Louisiana, Iowa and others.
65. Consulted to US Department of Justice, Eastern District of New York.

## PROFESSIONAL ASSOCIATIONS

- National Society of Professional Engineers
- New York State Society of Professional Engineers
- Queens Chapter, Society of Professional Engineers
- American Academy of Environmental Engineers, Diplomate
- American Industrial Hygiene Association (Full Membership)
- Royal Society of Chemistry (London), Fellow
- The Textile Institute, Fellow (Manchester, England)
- National Fire Protection Association
- Society of Civil Engineers
- Human Factors and Ergonomics Society
- American Society of Safety Engineers (Professional Member)
- Systems Safety Society - Senior Grade
- Standards Engineering Society
- American National Standards Institute (ANSI)
- Society of Automotive Engineers
- American Chemical Society (over 50 years)
- The American Institute of Chemical Engineers (Senior Member)
- Society of Plastics Engineers
- American Association of Textile Chemists and Colorists (AATCC)
- American Board of Forensic Examiners
-  Human Factors and Ergonomics Society
- United States Professional Tennis Association (certified tennis instructor)
- American Society for Testing and Materials: ASTM (1964- to present)

      C-8 Refractories;
      C-14 Glass & Glass Products;
      C-01 Cement
      D-1 Paint, Varnish, Lacquer & Related Products;
      D-9 Electrical Insulating Materials;
      D-12 Soaps & Other Detergents;
      D-13 Textiles;
      D-13.52 Flammability
      D-14 Adhesives;
      D-19 Water;
      D-20 Plastics;
      D-21 Polishes;
      D-26 Halogenated Organic Solvents;
      D-30 High Modulus Fibers and their Composites;
      E-5 Fire Tests of Materials and Construction;
      E-7 Non-destructive Testing;
      E-15 Analysis & Testing of Industrial Chemicals;
      E-17 Skid Resistance;
      E-20 Temperature Measurement, Chemicals;
      E-27 Hazard Potential of Chemicals;
      E-30 Forensic Sciences;

30579.00/000140

E-34 Occupational Health & Safety Aspects of Materials,
    Physical & Biological Agents;
E-28 Mechanical Testing;
F-8 Sports Equipment & Facilities;
F-9 Tires;
F-13 Safety & Traction of Footwear;
F-15 Consumer Product Safety;
F-23 Protective Clothing;
F-27 Snow Skiing
F-08 on Sports Equipment and Facilities
F08-Main Committee
F08-10 Bicycles
F08-11 In-Line Skating
F08-12 Wrestling and Gymnastics
F08-13 Fencing Equipment
F08-15 Ice Hockey
F08-16 Archery Products
F08-17 Trampolines and Related Equipment
F08-18 Golf Clubs and Shafts
F08-19 Bicycle Accessories
F08-21 Climbing and Mountaineering
F08.22 Camping Equipment;
F08-23 Tennis Courts and Running Tracks
F08-24 Paintball and Equipment
F08-25 Residential Basketball Equipment
F08-26 Baseball and Softball
F08-30 Fitness Products
F08-51 Medical Aspects and Biomechanics
F08-52 Playing Surfaces and Facilities
F08-52.1 Task Group Playground Surfacing
F08-53 Headgear and Helmets
F08-54 Athletic Footwear
F08-55 Body Padding
F08-56 Facilities-Baseball and Softball
F08-57 Eye Safety for Sports
F08-61 Ice Hockey Rinks
F08-63 Playground Surfacing Systems
F08-64 Natural Playing Surfaces
F08-65 Artificial Turf Systems
F24 on Amusement Rides and Devices
F24-10 Test Methods
F24-20 Specifications and Terminology
F24-24 Design and Manufacture
F24-30 Maintenance and Inspection
F24-40 Operations
F24-60 Special Rides & Attractions
F15      Consumer Products
F15-     Aquatic Play Equipment
F15-29 Public Playground Equipment
F15-36 Soft Contained Play Equipment
F15-44 Play Equipment for Children Under Two

30579.00/000141

**Schedule B**
**Photographs of Subject Site**





11

30579.00/000142

 

30579.00/000143

# SCHEDULE OF FEES FOR DR. C. J. ABRAHAM

## SCIENTIFIC ADVISORY SERVICES LTD.
3 Baker Hill Road
Great Neck, Long Island
New York 11023
516-482-5374
www.scientificadvisory.com
cjabraham1@aol.com

FED ID #: 11-3517097

**CONSULTATION ON CASES**                    **$300/HOUR**

**RETAINER FOR EACH CASE   $4,000 non-refundable (Accompanied with all of the discovery material, Complaint, Bill if Particulars, Interrogatories, depositions, labels, reports, etc.) charged off at $300 per hour.**

Discovery inspections are charged off at $300 per hour. Local inspections—portal to portal.

Inspections requiring air travel charged from time of arrival to time of departure from airport. Minimum charge $2,500 per day or any part thereof if within 8 hours of time.  Additional time is charged off at $300 per hour.

**DEPOSITIONS & TESTIMONY**
        **$4,000 PER DAY OR ANY PART THEREOF PLUS**
        **PREPARATION TIME AND ALL TRAVEL COSTS.***
        <u>No charge per hour while traveling by plane)</u>

**IN HAWAII, ALASKA, WESTERN CANADA, CARIBBEAN AND EUROPE**
        **$5,300 PER DAY OR ANY PART THEREOF PLUS**
        **PREPARATION TIME AND ALL TRAVEL COSTS.***
        <u>No charge per hour while traveling by plane)</u>

Reports and/or affidavits -- $4,000 maximum plus prior research and review of all the documents.

Summary judgment motions – standard fee is $4,000 regardless of time. If the time for preparation is 4 hours or less, the charge is $3,000.


*If air time is over 5 hours, travel is by business class only.
Additional costs include: car service in New York to airport R/T; meals; car service or car rental upon arrival; hotel charges (without extras).